IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RADIOSHACK CORPORATION,

      Plaintiff,

vs.                                        Case No. 12-2014-JTM

PHILLIP G. RUFFIN,

      Defendant.

MEMORANDUM AND ORDER

This matter comes before the court on plaintiff RadioShack Corporation's Application for Restraining Order and Preliminary Injunction (Dkt. No. 9) seeking to restrain and enjoin Phillip Ruffin from declaring it in default under a lease and from proceeding with an eviction proceeding he filed in state court. This court must determine whether it has jurisdiction under the Anti-Injunction Act to grant the requested relief and whether RadioShack has met the temporary restraining order standard. Because there is a pending state court action, the Anti-Injunction Act prohibits this court from enjoining the state court proceeding. Regardless, RadioShack has not met its burden of showing irreparable harm.

The court held a hearing on the temporary restraining order motion on February 16, 2012, ruled from the bench. This Memorandum and Order memorializes the court's findings.

**I. Factual Background**

On June 1, 1973, Mr. Ruffin and Tandy Corporation (the name in which RadioShack formerly conducted business) entered into a lease for retail space at the Peachtree Shopping Center in Wichita, Kansas. The initial lease expired on June 18, 1983, but was extended to 1988. Further extensions were obtained under the lease terms in 1994, 2000, and 2005. Plaintiff's current lease expires on June 30, 2013. The 1994 extension lease also modified the lease terms by including an "Excessive Vacancies" clause. This clause provides:

> **8. Excessive vacancies**: If, at any time during the Extension Term, the Gross Leasable Area of the Shopping Center is less than sixty percent (60%) actively occupied by other retail tenants or a major tenant [any tenant that occupies more than fifteen percent (15%) of the Gross Leasable Area of the Shopping Center] discontinues its operations and a similar tenant does not replace it within a period of six (6) months, then Tenant shall have the option of (a) terminating this Lease by giving Landlord sixty (60) days prior notice thereof and all rights and obligations of both parties shall cease upon the expiration of the aforesaid sixty (60) day period, or (b) paying Landlord three percent (3%) of Tenant's monthly Gross Sales, in arrears, within twenty (20) days after the end of each calender month, in lieu of Tenant's obligation to pay Fixed Minimum Rent and Percentage Rent as set forth in the Lease. Tenant shall be entitled to pay such percentage of Gross Sales until such time as at least sixty percent (60%) of the Gross Leasable Area of the Shopping Center is actively occupied by other retail tenants, and all major tenants, as defined above, are conducting normal retail operations within the Shopping Center. Notwithstanding Tenant's election to pay a percentage of sales as described, Tenant shall retain the right to terminate the Lease pursuant to the provisions of this paragraph.

Dkt. No. 9, Ex. 5. The subsequent 2000 and 2005, leases do not expressly mention the "Excessive Vacancies" clause. On February 26, 2007, RadioShack sent Mr. Ruffin a letter indicating it was exercising its right under the Excessive Vacancies clause and that it would begin paying rent according to that clause's terms. RadioShack paid rent under the clause until November 15, 2011—a period of nearly five years. On November 15, Mr. Ruffin offered to buy out the lease so he could demolish the shopping center and rebuild it. RadioShack rejected the offer and proposed a higher one. Thereafter, on December 6, 2011, Mr. Ruffin sent RadioShack a letter demanding full rent

under the lease, rejecting the Excessive Vacancies clause, and demanding back rent of $73,591.15. On December 13, 2011, RadioShack received the Notice to Quit. RadioShack paid the amount due in the Notice under protest. On December 28, 2011, RadioShack received another letter from Mr. Ruffin in which he demanded $75,888.03 in back rent and threatened to evict RadioShack.

RadioShack filed this case on January 6, 2012, and served Mr. Ruffin on January 9. In the Complaint, RadioShack seeks an order "[p]reliminarily enjoining Ruffin from attempting to evict RadioShack or otherwise gain possession of the Property pending the resolution of this action." Dkt. No. 1. On January 27, Mr. Ruffin filed a Forcible Detainer Petition in Sedgwick County District Court seeking a writ of restitution restoring him to the property. RadioShack has been served with the Detainer Petition. Under Kan. Stat. Ann. § 61-3805 RadioShack must appear/answer within 14 days of the issuance of the summons. And trial must be conducted within 14 days after the appearance. *Id.* § 3807.

## II. Anti-Injunction Act

Mr. Ruffin primarily argues this court must deny RadioShack's motion because the court does not have jurisdiction to enjoin the state court proceeding under the Anti-Injunction Act, 28 U.S.C. § 2283. Congress has explicitly restricted the ability of federal courts to enjoin state court actions under the Act. "The historical legacy and the prevailing policy against federal court intervention in state court proceedings are well documented." *Brown v. McCormick*, 608 F.2d 410, 415-16 (10th Cir. 1979) (citing cases). Section 2283 provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Supreme Court has held that this statute prohibits federal courts from enjoining state court actions on any other basis than the three enumerated exceptions. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970). The *Atlantic Coast Line* Court wrote:

> On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a [sic] 'principles of comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: 'This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clearcut prohibition qualified only by specifically defined exceptions.' *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515-516, 75 S. Ct. 452, 455, 99 L. Ed. 600 (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

*Id.* The Act, however, does not apply to an injunction that prohibits the initiation of a state court proceeding. *Torries v. Hebert*, 111 F. Supp.2d 806, 814 (W.D. La. 2000) ("It does not apply to an injunction which prohibits the initiation of a state court proceeding.") (citing *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965)).

First, RadioShack argues this case falls into the "in aid of jurisdiction" exception to the Anti-Injunction Act because this is an *in rem* action rather than an *in personam* one. In support of this position, RadioShack cites *Lattimore v. Nw. Cooperative Homes Assoc.*, No. Civ. A. 90-0049, 1990

WL 10521534 (D.D.C. Mar. 26, 1990). In *Lattimore*, the plaintiff filed for a federal restraining order seeking to prevent the defendant from evicting her from a housing unit she occupied. *Id.* at *1. The court held that the Anti-Injunction Act "in aid of jurisdiction" exception applied because the case did not involve a "strictly *in personam*" action. *Id.* at *4. The court stated:

> Although the federal action is formally a personal one, it essentially seeks to adjudicate rights and interests in land and, as explained above, unless the status quo is maintained there is a risk that the Court's ability to make plaintiffs whole and effectively grant the remedy of rescission will be impaired. An interlocutory injunction is therefore 'necessary in aid of [this Court's] jurisdiction.

*Id.* (quoting *Barancik v. Investors Funding Corp. of New York*, 489 F.2d 933, 935 n.6 (7th Cir. 1973)).

The Supreme Court, however, has held that the "in aid of jurisdiction" exception is not broad. In fact, it should be narrowly construed like the other exceptions:

> First, a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy. . . . Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to 'protect or effectuate' judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. . . . Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court.

*Atlantic Coast Line*, 398 U.S. at 294-96 (citations omitted). The determination of whether a requested injunction is necessary in aid of its jurisdiction is committed to the discretion of the court. *Ambiance, Inc., v. Commodore Gen. Ins.*, 553 F. Supp. 285 (S.D.N.Y.1982). Any doubts about the

propriety of entering injunction under the Anti-Injunction Act should be resolved against injunctive relief. *Atlantic Cost Line*, 398 U.S. at 297. "The explicit wording of s 2283 itself implies as much, and the fundamental principles of a dual system of courts leads invariably to that conclusion." *Id.* Although this dispute involves real property, the main issue is one of contract interpretation. Thus, this is an *in personam* action. *See Hyde Constr. Co. v. Koehring Co.*, 388 F.2d 501, 508 (10th Cir. 1968). The "in aid of jurisdiction" exception is inapplicable.

Regardless, even if not within the exceptions to the Act, RadioShack contends the timing of the state court eviction proceeding removes this case from the Act's purview entirely. Here, Mr. Ruffin initiated the state court eviction action 21 days after this federal suit was filed. Thus, the issue is whether the state court eviction proceeding is "pending" within the meaning of the Anti-Injunction Act thereby prohibiting this court from exercising jurisdiction. The Tenth Circuit has not decided the question, and there is a circuit split among the seven circuits that have addressed it. *Compare Nat'l City Lines, Inc. v. L.L.C. Corp.*, 687 F.2d 1122 (8th Cir. 1982); *Barancik v. Investors Funding Corp.*, 489 F.2d 933 (7th Cir. 1973); *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837 (1st Cir. 1988), *with Denny's, Inc. v. Cake*, 364 F.3d 521 (4th Cir. 2004); *Martingale L.L.C. v. City of Louisville*, 361 F.3d 297 (6th Cir. 2004); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877 (5th Cir. 1993); *Standard Microsystems Corp. v. Texas Instruments, Inc.*, 916 F.2d 58 (2d Cir. 1990). In *Nat'l City Lines, Inc.*, the court held that the Anti-Injunction Act "is inapplicable when a federal court has first obtained jurisdiction of a matter in controversy by the institution of suit. Notwithstanding the confines of the Anti-Injunction Act, the federal court may in these circumstances restrain subsequently filed state court proceedings involving the same subject matter." 687 F.2d at 1127. The court reasoned that "the question whether state actions are 'pending' is

appropriately answered by reference to the date on which injunctive relief is sought in federal court, not the date on which injunctive relief is granted." *Id.* The leading case holding timing determines application of the Act comes from the Seventh Circuit in an opinion written by then Judge Stevens. *See Barancik*, 489 F.2d at 936-37. In *Barancik*, the court stated:

> The timing of a litigant's resort to the state court is significant. Timing may affect the exercise of a federal judge's discretion; it may also affect his power.
> As a matter of discretion, if a litigant, to no avail, has used his best efforts to obtain a ruling on an issue pending in federal court, his initiation of state proceedings amy [sic] demonstrate nothing more than appropriate diligence. On the other hand, if a defendant has endeavored to delay proceedings or to forestall decision on issues pending in the federal court, a similar act may represent an attempt to obtain a more favorable forum. It may tend to fragment litigation which is best decided as a single matter; it may even evidence disrespect for the federal tribunal.
> In this case we have no occasion to consider whether defendants' timing was a factor that militated in favor of, or against, the entry of the injunction. For we are not asked to review the exercise of the Chancellor's discretion. It is sufficient to note that plaintiffs' status quo motion was ripe for decision by the federal court when defendants invoked the jurisdiction of the Municipal Court of Chicago, that neither party charges the other or the court with improper delay while the motion was pending, and that the court was aware of the pendency of the state action and weighed its significance before it acted. Neither the record nor the argument advanced by defendants provides any basis for concluding that the district judge abused his discretion.
>
> . . . .
>
> The answer to the question, in our view, turns on the mandatory character of the statute. If the statute merely identified a factor for a court to weigh in the exercise of its discretion, that factor would be appropriately evaluated as of the time of the entry of the injunction. But since the statute imposes an absolute ban, circumscribing the federal court's power to act unless a case falls within one of the explicit exceptions from its command, we believe its applicability must be determined as of the time when the federal court's injunctive powers are invoked.
>
> . . . .
>
> Unless the applicability of the statutory bar is determined by the state of the record at the time the motion for an injunction is made, a litigant would have an absolute right to defeat a well-founded motion by taking the very step the federal court was being urged to enjoin. Under defendant's reading of the statute, if a federal

court took time for fair consideration of the merits of a request for an injunction, the court would deliberate at its peril; its authority to rule on the pending motion could be terminated by the action of one of the litigants. We consider this possibility unseemly.

489 F.2d at 936-37.

On the other hand, the Second, Fourth, Fifth, and Sixth circuits have held that the Anti-Injunction Act bars a federal court from enjoining a state court action even if the state court action was filed after the federal suit seeking injunctive relief. *See Denny's, Inc.*, 364 F.3d at 530-31; *Martingale L.L.C.*, 361 F.3d at 302-04; *Royal Ins. Co. of Am.*, 3 F.3d at 885; *Standard Microsystems Corp.*, 916 F.2d at 62. The reasoning of these courts was summarized succinctly by the *Royal Ins. Co.* court:

> We subscribe to what we think is the better view-that the Act applies regardless of when the federal and state suits were filed. The plain language of the statute contains no exception for a situation in which the federal suit was filed first. As the *Roth* court notes, 583 F.2d at 533, the Supreme Court has held that the statute provides an absolute prohibition on injunctions unless one of the three exceptions applies.
> The Court repeatedly has emphasized that those exceptions are exclusive and that federal courts may not craft new ones. Any doubts should be resolved in favor of denying the injunction. *Roth*, 583 F.2d at 533 (citing *Atlantic Coast Line R.R.*, 398 U.S. at 286-87, 90 S. Ct. at 1743). Given the Court's consistently narrow interpretation of the Act, the presumption in favor of denying an injunction, and the absence of language in the statute suggesting that its application depends upon the time of filing of the state suit, we think *Roth* provides the better analysis. We conclude, therefore, that the Act applies whenever a state suit is pending, regardless of when it was filed.

3 F.3d at 885.

Here, RadioShack filed this suit on January 6, 2012, seeking to enjoin Mr. Ruffin from evicting it until resolution of this action. There was no state court action pending on that date. On January 27, Mr. Ruffin filed a Forcible Detainer Petition in Sedgwick County District Court seeking to evict RadioShack. This court finds that the Anti-Injunction Act prohibits enjoining the state court

8

eviction proceeding even though the eviction case was filed after the federal suit. First, the Act does not mention the timing of the state court suit. Rather, the Act is concerned with federal interference in pending state court actions, whenever filed. Further, the Act specifically provides three narrow circumstances in which a federal court may enjoin a pending state court proceeding—instances of a later-filed state court action is not one of the exceptions. The Supreme Court has emphasized that those three exceptions are exclusive and that the federal courts may not craft new ones. *See Atlantic Coast Line*, 398 U.S. at 286-87. And any doubts should be resolved in favor of denying an injunction. *Id.* Given the Supreme Court's narrow interpretation of the Act, the presumption in favor of denying the injunction, and the absence of language in the statute referring to the time of filing of the state suit, this court finds the Anti-Injunction Act applies regardless of when the pending state suit was filed. Therefore, this court denies RadioShack's motion for a temporary restraining order.

The court notes that even if it determined the Anti-Injunction Act did not prohibit federal court intervention, it must still look at the principles of equity, comity, and federalism before deciding whether to enjoin the eviction action. *See Barancik*, 489 F.2d at 938. Under these principles, many convincing arguments could be made that exercising jurisdiction over this action is not proper. This is a landlord/tenant dispute concerning only state law. Further, the state has adopted a summary proceeding (the eviction action currently pending) specifically for these types of situations. Federal court intervention in this action delays this process unnecessarily. Finally, if RadioShack is unhappy with the state district court's adjudication, it may appeal as allowed under Kan. Stat. Ann. §§ 61-3901 to 61-3909.

**III. RadioShack Has Not Met Its Burden of Establishing Irreparable Harm**

Even though the court has concluded the Anti-Injunction Act bars it from restraining or enjoining the state court eviction proceeding, RadioShack's motion fails because it cannot show irreparable harm.

The purpose of a temporary restraining order is to preserve the status quo and prevent immediate and irreparable harm until the court has an opportunity to rule on the merits of a preliminary injunction. *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp.2d 1253, 1258 (D. Kan. 2001). The purpose of a preliminary injunction is to preserve the status quo pending final resolution of the matter. *Snyder v. Am. Kennel Club*, 575 F. Supp.2d 1236, 1240 (D. Kan. 2008). The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court. *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 354 (10th Cir.1986). To obtain a temporary restraining order, the plaintiff has the burden of establishing that:

> 1. The party will suffer irreparable injury unless the injunction issues;
> 2. The threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party;
> 3. The injunction, if issued, would not be adverse to the public interest; and
> 4. There is a substantial likelihood that the plaintiff will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992). If the plaintiff satisfies the first three elements, the standard for meeting the fourth, likelihood of prevailing on the merits, becomes more lenient. *See Flying Cross Check, L.L.C.*, 153 F. Supp.2d at 1260.

*A. Irreparable Harm*

"'To constitute irreparable harm, a injury must be certain, great, actual and not theoretical.'" *Universal Engraving, Inc. v. Duarte*, 519 F. Supp.2d 1140, 1148 (D. Kan. 2007) (quoting *Heideman*

10

*v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). The requirement is met if a plaintiff shows that there is a significant risk that the harm cannot be cured by monetary damages. *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). The party seeking the preliminary injunction bears the burden to show that "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief." *Heideman*, 348 F.3d at 1189 (quotations omitted).

Here, RadioShack argues it will suffer irreparable injury by way of lack of sales, loss of customers, and loss of goodwill if it is evicted from a retail location it has occupied for almost 40 years. This court has found such injuries can constitute irreparable harm. *See Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F. Supp. 1172, 1181-82 (D. Kan. 1988). Yet RadioShack's losses, if it is evicted from its current location, will be primarily economic and can be compensated by monetary damages. In fact, loss of sales can only be compensated with money. Further, to the extent RadioShack stands to lose customers or goodwill, that also can be compensated with money, albeit, not in as precise a manner as loss of sales. Regardless, RadioShack has not met its burden of proving irreparable harm.

*B. Balance of Injuries and Public Interest*

RadioShack argues its harm outweighs any potential harm to Mr. Ruffin because he only stands to lose the difference between the monthly rate RadioShack contends it owes and the amount Mr. Ruffin believes is owed under the lease. This is a monetary value for which Mr. Ruffin may be compensated. RadioShack also argues that the public has an interest in enforcing contracts. Mr.

Ruffin essentially concedes that neither of these factors tip the scales one way or the other. The court agrees.

First, if the court granted the temporary restraining order Mr. Ruffin would lose rent that he may be entitled to under the lease. On the other hand, if the court does not grant the relief RadioShack stands to lose money. Because the potential harm to either party essentially amounts to money damages it cannot be said that RadioShack's potential harm outweighs Mr. Ruffin's. This factor is neutral. On the public interest factor, the court can only identify the public's general interest in upholding enforceable contracts. *See Universal Engraving, Inc. v. Duarte*, 519 F. Supp.2d 1140, 1149-50 (D. Kan. 2007). And the court cannot say that there is a public interest in RadioShack maintaining its current location at the Peachtree Shopping Center. However, as discussed below, the likelihood of success on the merits is impossible to determine at this stage. Thus, this factor is neutral.

*C. Success on the Merits*

RadioShack argues the Excessive Vacancies clause of the 1994 lease remains in full force and effect. It points to language in the current Lease Extension Agreement (Dkt. No. 9, Ex. 7) providing that "[t]his Agreement shall be upon the same terms and conditions provided in the Lease, except as the same are hereby modified and supplemented. Wherever there is any conflict between this Agreement and the Lease, the provisions of this Agreement are paramount and the Lease shall be construed accordingly." It argues that because the current lease does not abrogate the Excessive Vacancies clause or conflict with it, the clause remains in effect. This is a reasonable argument based on the information presented to the court at this time.

Mr. Ruffin argues the current lease eliminates reference to the Excessive Vacancies clause and bases rental payments exclusively on a clause titled "Fixed Minimum Rent." This clause provides that: "Tenant shall pay to Landlord as 'Fixed Minimum Rent' the sum of $2,296.88 per month during the Extension term, notwithstanding the designation of the Effective Date above." Dkt. No. 9, Ex. 7. This interpretation is also reasonable. Given these two reasonable interpretations, the court cannot determine at this early date whether or not RadioShack likely would be successful on the merits.

**IV. Conclusion**

This court cannot issue the temporary restraining order prayed for by RadioShack. The Anti-Injunction Act bars this court from interfering in the pending state eviction proceeding even though the state suit was filed after this one. Even if the Anti-Injunction Act did not prohibit this court from exercising jurisdiction, strong principles of comity and federalism weigh against getting involved in this landlord/tenant dispute. Last, even if the court had jurisdiction, RadioShack has not met the standard necessary to obtain a temporary restraining order because it cannot show irreparable harm.

IT IS ACCORDINGLY ORDERED this 22nd day of February 2012, that RadioShack's Application for Restraining Order (Dkt. No. 9) is denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE